<div style="text-align:center">

# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

</div>

| | | |
|---|---|---|
| CINDY MINOR | § | |
| | § | |
| V. | § | CASE NO. 4:05CV339 |
| | § | (Judge Schneider/Judge Bush) |
| ALCATEL USA RESOURCES, INC. | § | |

<div style="text-align:center">

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

</div>

Before the Court is Defendant Alcatel USA Resources, Inc.'s ("Alcatel") Motion for Summary Judgment. (Docket No. 32). Having considered the Motion, Plaintiff's Response, and Defendants' Reply, the Court is of the opinion that the motion should be granted in part and denied in part.

<div style="text-align:center">

**HISTORY**

</div>

Plaintiff Cindy Minor ("Minor") began working for Alcatel on June 28, 1998. In April 2004, Paul Lebeuf ("Lebuef") became Minor's immediate supervisor in the LAN Services Group. Minor was the only female of the eight member group. The other individuals were Dwight Boutte, Jay Burnett, Reid Bush, George Flint, Kevin Petitto, Jean Marie Vaneskahian, and Paul Whittemore.

Minor managed the Active Directory Mitigation Project under Lebeuf's supervision. While managing the project, Minor discussed her strenuous workload with Lebeuf and informed him she was doing the majority of the workload of the team. In June 2004, Lebeuf told Minor he wanted to promote her to team leader which meant increased pay. Minor informed Lebeuf she had been offered the position four times by two different managers but the promotion never happened. Minor alleges she was told to go ahead and perform the responsibilities of the job, but again was not officially promoted to team leader.

Also in June 2004, Minor reported to Lebeuf that her team members were engaging in conduct she considered to be sexual harassment, i.e. rubbing her shoulders. Lebeuf reported Minor's allegations to the Human Resources Advisor assigned to the LAN Services Group, Pat Foster ("Foster"). Foster and Minor met on July 8, 2004 to discuss her concerns but she did not provide him with the name of a particular person and she expressed her reluctance in pursuing the claim. The conversation then turned to Minor's workload, denial of the team leader position, inappropriate actions of the team, and the team's general degradation of women.

Foster then discussed Minor's complaint with Mike Zeeff, Vice-President of Operations, and Kevin Fisher, the Director of the LAN Services Group and Lebeuf's supervisor who directed Lebeuf to address Minor's complaints. Lebeuf acknowledged Minor was solely responsible for the project without input from the other group members. Thereafter, Minor sent Foster an email thanking him for his help but cautioned him that she had concerns that her complaint had adversely affected her relationship with Lebeuf and Fisher.

On October 18, 2004, Minor was informed that she was selected for a reduction in workforce. She alleges she was given no reason for such selection. In January 2005, Minor filed her charge of discrimination with the Equal Employment and Opportunity Commission ("EEOC"). On July 18, 2005, she was issued a Notice of Right to Sue. On August 24, 2005, Minor filed her original Complaint.

In her Third Amended Complaint, Minor asserts claims of gender based discrimination based on disparate treatment and unequal pay in violation of Title VII, the Equal Pay Act ("EPA"), and the Texas Commission on Human Rights Act ("TCHRA"). Minor also alleges claims for retaliation in violation of Title VII and the TCHRA. Alcatel moves for summary

judgment on all claims.[1]

## STANDARD

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. V. Catrett*, 477 U.S. 317, 323 (1986). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of the opposing party's claims. *Int'l Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg Co.*, 812 F.2d 219, 222 (5th Cir. 1987). The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. FED. R. CIV. P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts. *Id.* at 256-57. He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party." *Id.* at 254. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. *Id.* at 252.

---

[1] Following her deposition, Minor sought leave to amend her Complaint for the third time. Alcatel agreed to do so with the understanding that Minor was withdrawing her claims for failure to hire and hostile work environment. The Court granted the motion. Therefore, there are no such claims before the Court and the Court will not consider any arguments made thereto.

All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), *citing United States v. Diebold*, 369 U.S. 654, 655 (1962).  Once the burden of proof has shifted to the non-movant, he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. at 586.  Instead, he must produce evidence upon which a jury could reasonably base a verdict in his favor. *Anderson*, 477 U.S. at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50.  Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of N. Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).  Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. *Grimes v. Texas Dept. of Mental Health & Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996), *citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline*

*Co.*, 136 F.3d 455, 458 (5th Cir. 1998), *citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16, and n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).

## ANALYSIS

### Discrimination

The Civil Rights Act of 1964 makes it unlawful to discriminate based on race, color, religion, sex, or national origin in voting, employment, and public services. Title VII prohibits such discrimination by covered employers. *See* 42 U.S.C.A. § 2000(e)(2). The Texas Labor Code provides a cause of action for retaliation or discrimination against a person who exercises his rights under the provisions of chapter 21, which makes unlawful certain employment practices based on a person's race, color, disability, religion, sex, national origin, or age. TEX. LABOR CODE ANN. §§ 21.055, 21.051 (West 2005). One of the purposes behind chapter 21 is to provide for the execution of the policies embodied in Title VII so that the investigation and resolution of employment discrimination claims may be handled at the state level. *See* TEX. LAB. CODE ANN. §§ 21.001, 21.002, 21.003, 21.006 (Vernon 1996 & Supp. 2005); *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 482, 485 (Tex.1991) (Title VII); *Machinchick v. PB Power, Inc.*, 398 F.3d 345 (5th Cir. 2005). Accordingly, the Court uses a federal evidentiary framework when interpreting chapter 21. *See Machinchick*, 398 F.3d at 356 (concluding that there is "no meaningful distinction" between the analysis that a court should employ under chapter 21 and the analysis it should apply to the analogous federal claim); *see also Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir.2000); *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n. 2 (5th Cir.1996).

Title VII discrimination claims based on circumstantial evidence are analyzed under the

framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Rutherford v. Harris County*, 197 F.3d 173, 179-80 (5th Cir.1999). Under the *McDonnell Douglas* burden-shifting framework, Minor must first present a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell-Douglas*, 411 U.S. 792, 802-04. Confronted with a presumption of discrimination, Alcatel must then articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If Alcatel meets the burden, Minor must then offer sufficient evidence to create a genuine issue of material fact that either: (1) Alcatel's reason is not true but is instead a pretext for discrimination, or (2) Alcatel's reason, while true, is only one of the reasons for its conduct, and another motivating factor is Plaintiff's protected characteristic. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2005). If Minor demonstrates that gender was a motivating factor, then it falls to Alcatel to *prove* that the same adverse employment decision would have been made regardless of discriminatory animus. *Machinchick,* 398 F.3d at 350.

### *Gender*

Minor alleges gender discrimination with respect to her termination. (Pl.'s 3rd. Am. Compl., ¶¶ 25, 28, 28, 48, 49). To establish a prima facie case for gender discrimination under Title VII, Minor must establish (1) that she is a member of a protected class, (2) that she was qualified for the position, (3) that she suffered an adverse employment action, and (4) that either she was replaced by someone not in the protected class, or others similarly situated were treated more favorably. *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001). Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating. *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir.2000).

When the employer does not replace the plaintiff, then the fourth element requires the plaintiff to show that others who are not in the protected class remain in similar positions. *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir.1999).

Minor has established a *prima facie* case for discrimination as to her termination in that she is a member of a protected class, was qualified for her position, was discharged, and the seven remaining team members, all male, remained in their position.  However, when asked about her termination, Minor answered, in pertinent part:

> Q:   Okay.  And really I just want to make sure I understand about the layoff itself and whether you are claiming that the decision to include you in the layoff was gender discrimination.
>
> A:   I don't believe it was.  I believe it was about retaliation.

(Minor's Dep. 281: 11-16).

Minor's own admission, that her termination was based on retaliation not gender, negates her claims for gender discrimination as to her termination.

*Compensation*

Alcatel argues Minor's compensation claims fail as a matter of law.  For Title VII compensation claims, the fourth prong of the *prima facie* case requires Minor to demonstrate that similarly situated males were treated differently under nearly identical circumstances. *Ward v. Bechtel Corp.*, 102 F.3d 199, 200 (5th Cir. 1997).  If Alcatel is able to state a legitimate, non-discriminatory reason for the employment action, Minor is left to prove that Alcatel acted with discriminatory intent. *Hofmeister v. State Dep't of Health*, 53 F. Supp. 2d 884 (S.D. Miss. 1999) (*citing Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1131-32 (5th Cir. 1983).

Claims pursuant to the Equal Pay Act ("EPA") require that Minor establish that (1) her employer is subject to the Act; (2) she performed equal work on jobs the performance of which

requires equal skill, effort, and responsibility, and which are performed under similar working conditions; and (3) she was paid at a rate less than the rate at which Alcatel pays wages to (similarly situated) employees of the opposite sex. *See* 29 U.S.C.A. § 206 (d)(1); *Jones v. Flagship Int'l*, 793 F.2d 714, 722-23 (5th Cir.1986), *cert. denied*, 479 U.S. 1065 (1987). The statute provides for an exception to equal wages where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex...29 U.S.C.A. § 206 (d)(1).[2]

Minor alleges she was discriminated against in terms of her compensation because she worked more but was paid less and was given more responsibility than her male co-workers. Minor points out that all members of the team supported systems that used the Windows operating system and that although each supported different systems, all were Windows-based and the duties were interchangeable within the group. Minor also submits the team members' performance evaluations and argues that many of the objectives, key activities, and performance indicators are identical.

Alactel argues Minor's Title VII unequal compensation claims fail as a matter of law because she had entirely different job duties and responsibilities as compared to her male peers.

In pertinent part, Alcatel describes the comparable employees responsibilities as follows:

*Jay Burnett*   Mr. Burnett was primarily responsible for the Orion systems, a job Minor indicated she was pretty close to learning. His position also required him to collaborate with international personnel and he was funded by European operations.

*Craig Weiss*   Mr. Weiss supported Citrix Metaframe servers and the WebCam system which was used to deliver communications from key executives to employees throughout North America. His experience prior to Alcatel was one of development, not of maintenance of systems. His tasks were far more technical than Plaintiffs and required a higher level of work. (Bagherian Dep. 119:13-19).

---

[2] Title VII incorporates the EPA's four affirmative defenses. *Peters v. City of Shreveport*, 818 F.2d 1148, 1157 (5th Cir. 1987) (*citing County of Washington v. Gunther*, 452 U.S. 161 (1981)).

*Kevin Petitto*   Mr. Petitto earned less than Minor at all times during her tenure with Alcatel.

*Paul Whittemore*   Mr. Whittemore supported Alcatel's Unicam system and was responsible for server maintenace, coordinating repairs and installations, and managing the Resumix service.

*Dwight Boutte*   Mr. Boutte had experience as an Engineering Team Leader and an MIS Programmer Analyst. Minor did not. Alcatel argues his objectives were also different and involved a different reporting structure.

*George Flint*   Mr. Flint supported Alcatel's "VAX" systems, which operate under a system different from Windows or UNIX, and which Minor admits she was not competent to handle. (LeBeuf Dep. 159:5-12).

The Court notes the differences between each employee's responsibilities. To establish that job responsibilities are *equal* does not mean Plaintiff is required to establish the job responsibilities are *identical*. *See Peters v. City of Shreveport*, 818 F.2d 1148, 1153 (5th Cir. 1987); *Williams*, 1997 WL 53142 at *6 n. 1. At this point, the Court cannot state affirmatively that as a matter of law, Minor has met her burden for establishing a prima facie case. However, even were the Court to find as such, Alcatel still proffers valid exemptions.

Alcatel contends that the pay differential between Minor and other employees of the opposite sex is based on other legitimate factors, such as market value of skills, previous experience, and prior salary, which fall squarely into the statutory exception which allows for a wage "differential based on any other factor other than sex." 29 U.S.C.A. § 206 (d)(1)(iii). The Court agrees.

Alcatel asserts that each person Minor compares her salary to were offered salaries consistent with their prior work experience. Minor argues that she has three more years experience than the average of the seven male team members yet is paid less than the average of the less experienced members. Alcatel points out that George Flint and Jay Burnett, both *males* with the most seniority, were also paid less than other employees with much shorter tenure. Alcatel contends it recognized

9

the market value of Minor' skills as she was paid a $7500 increase in base salary as compared to her five previous employers over the preceding nine years and that she was the only employee offered a base salary that was $7,500 higher than her previous base. Alcatel concedes that Minor displays management experience and had more years of raw work experience than some of her peers. However, Alcatel submits that the focus of the LAN Services group was technical, with an isolated, exceptional need for project management and that Minor's prior experience was more focused on IT training and management than IT systems administration.[3]

Accordingly, the Court finds Minor cannot establish pretext as to her Title VII compensation claim and Alcatel has met its burden in establishing its affirmative defense for the EPA. Defendant's Motion for Summary Judgment as to Minor's compensation claims is GRANTED.

**Retaliation**

Alcatel also moves for summary judgment on Minor's retaliation claims.[4] Claims for unlawful retaliation require that Minor establish (1) she engaged in an activity protected by Title VII, (2) an adverse employment action occurred, (3) that a causal link existed between the protected activity and the adverse employment action. *Long v. Eastfield Coll.,* 88 F.3d 300, 304 (5th Cir. 1996), *citing McMillan*, 710 F.2d at 1116.

*Protected Activity*

Alcatel moves for summary judgment on the grounds that Minor was not engaged in protected activity to establish a *prima face* case. An employee is engaged in protected activity if

---

[3]Minor argues that she is more educated and has more certifications than her male peers. However, Alcatel never asserts that it considered an employee's formal education in determining compensation.

[4]As previously noted, the Court uses a federal evidentiary framework when interpreting chapter 21. *See Machinchick*, 398 F.3d at 356 (concluding that there is "no meaningful distinction" between the analysis that a court should employ under chapter 21 and the analysis it should apply to the analogous federal claim); *see also Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir.2000); *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n. 2 (5th Cir.1996).

she has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C §2000e-3(a).

Alcatel argues that because Minor did not provide Foster with the name of the person who allegedly sexually harassed her, this inhibited Alcatel's ability to conduct a formal investigation. Alcatel also argues that the rest of Minor's conversation with Foster regarding her workload and compensation did not rise to the level of protected activity because she did not specifically articulate that her complaints were discriminatory.

LeBeuf asserted in his deposition that Minor told him one of their team members would every now and then over a long period of time come into her office and massage her shoulders. He also stated that Minor told him she considered it to be sexual harassment but she did not want him to do anything about it because 'she was handling it.' (Lebeuf Dep. 69:15-20). Foster asserted in his deposition that Lebeuf brought to his attention that there was possible sexual harassment going on. (Foster Dep. 21:5-7). This resulted in the meeting between Minor and Foster. In the meeting, Minor chose not to provide Foster the name of the person she was complaining against and not to pursue the allegations. It is a well recognized principle that an informal complaint to an employer or administrative agency can constitute protected activity and form the basis of a valid retaliation claim. *Cusack v. Trans-Global Solutions, Inc.* 222 F. Supp. 2d 834, 841-42 (S.D. Tex. 2002); *see also Abramson v. William Paterson College*, 260 F.3d 265, 289 (3rd Cir. 2001) (Title VII); *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3rd Cir. 1995) (Age Discrimination in Employment Act); *Truex v. Hearst Communications, Inc.*, 96 F. Supp.2d 652, 665-66 (S.D. Tex. 2000) (Fair Labor Standards Act); *Pipkins v. City of Temple Terrace, Florida*, 267 F.3d 1197, 1201 (11th Cir. 2001); *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1255 (10th Cir. 2001) ("Informal complaints

to superiors constitute protected activity."); *Matima v. Celli*, 228 F.3d 68, 78-79 (2d Cir. 2000).

In any event, Alcatel also argues that Minor's complaints about her workload and compensation were not protected because Minor did not consider them to be discriminatory. Alcatel relies on *Harris-Childs v. Medco Health Solutions, Inc.*, 169 Fed. App'x 913 (5th Cir. 2006), to argue that general complaints about working conditions do not rise to the level of protected activity. In *Harris-Childs*, the district court found that the plaintiff was unable to shoulder her burden of demonstrating that she complained of racial or sexual discrimination because in her deposition she admits that she never mentioned race or sex when she made her complaints. The Fifth Circuit agreed stating that "although her deposition demonstrates she complained of unfair treatment…she has not demonstrated that she put the employer on notice that her complaint was based on racial or sexual discrimination." *Id.* at 916.

When asked about her meeting with Foster in regard to the degradation of women, Minor answered, in pertinent part:

> Q: Degradation of women in general conversation?
> A: Yes. In meetings, not just hallway conversation....[T]hat women were not first-class citizens, that they were less, less [sic] technical, less intelligent. I think the comments were we should worry about hanging drapes and what color coordination should happen at our homes.
>
> Q: Anything else that you told him? Did you tell him that? Were you telling me--
> A: I don't know if those exact words were used..
> (Minor Dep. 19:25-20:24).
>
> Q: Asking about protected classes and discrimination. Did he ask you whether you thought you were being discriminated against?
> A: I don't recall that.
>
> Q: Did you tell him you thought you were being discriminated against because of your gender?
> A: I have no exact recollection of that conversation, but that was one of my purposes to see him.

(Minor Dep. 28:16-24).

The Court notes that Title VII is not a strict liability statute for employers. However, in light of the notice requirement discussed in *Harris-Childs*, the Court finds Alcatel was on notice that Minor's complaints were based on gender discrimination. In contrast to *Harris-Childs*, Minor's deposition indicates she and Foster did discuss the issue of gender discrimination. (Minor Dep. 99:19-22; 100:12-25). Further, according to Foster's declaration, he is a human resources professional trained to identify *potential issues*. Foster explained that he wrote the words "constructive discharge" in his contemporaneous notes in response to Minor's comment that "they were trying to get her to quit" (when discussing her workload). He also wrote the word "discrimination" even though "Ms. Minor never stated she was being discriminated against." (Foster Decl. ¶ 8). Thus, in light of Foster's training and evidenced by his contemporaneous notes and conversations with Minor and Lebeuf, the Court finds the evidence is sufficient to show that Foster was on notice that Minor's complaints were based on gender discrimination.

*Causal Connection*

Alcatel argues that even if Minor was engaged in a protected activity, there is no causal connection between the alleged protected activity and Minor's termination because there is no evidence connecting her meeting with Foster to her termination. In order to establish the causal link between the protected conduct and the illegal employment action, as required for a *prima facie* case, the evidence must show that the employer's decision to terminate was based in part on knowledge of the employee's protected activity. *Sherrod v. Am. Airlines, Inc.* 132 F.3d 1112, 1122 (5th Cir. 1998). Minor does not, however, need to prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the "causal link" element of a

prima facie case. *See Long*, 88 F.3d at 305, (*citing De Anda v. St. Joseph Hosp.*, 671 F.2d 850, 857 n. 12 (5th Cir. 1982)).

After Minor's meeting with Foster, Minor sent Foster an email thanking him for his assistance. She also expressed her concern for possible retaliation. Foster indicated he does not recall following up with Minor's concern for retaliation. (Foster Dep. 139:10). Thereafter, according to Minor's deposition testimony, her job responsibilities on the Active Directory Mitigation Project were essentially reassigned to Lebeuf and others who had not previously worked on the project. Also, Minor stated that Lebeuf wanted to give her a team lead position and considered her to be ranked in the middle of her group. After she made her complaint, Minor was ranked second to lowest and this eventually led to her termination. The Court finds there is sufficient evidence to show a causal link between Minor's complaint and her termination. *See Long*, 88 F.3d 306 (holding that evidence of a supervisor's knowledge of the protected activity and subsequent recommendation of termination is sufficient to prove a causal link).

*McDonnell Douglas Burden-Shifting Framework*

Alcatel finally argues that even if Minor establishes protected activity and a causal connection, she cannot establish the reduction in workforce was pretext for retaliation or gender discrimination. The *McDonnell Douglas* burden-shifting structure applicable to Title VII disparate treatment claims is also applicable to Title VII retaliation claims. *See Warren v. Terex Corp.* 328 F. Supp. 2d 641 (N.D. Miss. 2004); *Bergen v. Cont'l Cas. Co.*, 2005 WL 292426 (N.D. Tex. 2005). *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983). If Minor establishes her prima facie claim, the burden then shifts to Alcatel to articulate a legitimate, nonretaliatory reason for the adverse employment action. *Id. See also Hockman v. Westward Comms., LLC,* 122 Fed. App'x 734, 747 (5th Cir. 2004). If Alcatel introduces evidence which, if true, would permit the conclusion that

the adverse employment action was nondiscriminatory, the presumption of retaliation disappears, and the ultimate question of whether Alcatel unlawfully retaliated against Minor remains. *Id.*

To demonstrate this causation, an employee must show that "but for" the protected activity, the adverse employment action would not have taken place. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005); *Green v. Admin. of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002). In other words, even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct. *Jack v. Texaco Research Ctr.*, 743 F.2d 1129, 1131 (5th Cir.1984).[5]

Alcatel argues there is no evidence of pretext because Lebuef chose Minor through a process of elimination. Lebeuf stated he knew Minor had expressed an interest in changing career paths and that her duties could most easily be absorbed. Minor stated that she did not have many responsibilities left on the project because Lebeuf took it over after her meeting with Foster leaving her minimally involved. In response to the EEOC, Alcatel stated Minor was terminated because her project was near completion and she was the lowest performer on her team. Minor stated in her deposition that her project was not near completion but actually had several months left. Also, Minor indicated she was not the lowest performer in the group and that just weeks prior to her HR complaint, Lebeuf actually praised her work and wanted to promote her. The Court finds there is a fact issue as to whether or not Minor's complaint resulted in the complete reassignment of her work responsibilities and whether this reassignment resulted in her becoming the best candidate for termination. Therefore, Defendant's Motion for Summary Judgment as to Minor's retaliation claims

---

[5]The standard for establishing the "causal link" element of the *prima facie* case is much less stringent than establishing "but for causation." *See McMillan*, 710 F.2d at 1116-17 (holding plaintiff's evidence sufficient to meet causation element of prima facie case but insufficient to prove ultimate question of "but for" causation).

is DENIED.

## RECOMMENDATION

Based upon the foregoing, the Court recommends that Defendant's Motion for Summary Judgment on Plaintiff's discrimination and compensation claims be GRANTED and Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claims be DENIED.

Within ten (10) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 1st day of May, 2007.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE